OVA, OVA, OVA, a person having business before the Honorable, the United States Court of Appeals to the District of Columbia Circuit, pardon my misbehavior, and give their attention to the Court of Appeals to the District of Columbia Circuit, God save the United States and the Honorable Court. Please be seated. Case number 16-5333, Gregory Bartko, Appellant v. United States Department of Justice et al., Ms. Brill for the amicus curiae, Mr. Kolsky for the athletes. Good morning. Good morning. May it please the Court, I'm Sophia Brill, presenting argument as appointed amicus counsel for the appellant, Mr. Gregory Bartko. I'd like to reserve three minutes of my time for rebuttal. I'll be discussing three issues presented in this appeal. First, the District Court's decision allowing the Office of Professional Responsibility neither to confirm nor deny the existence of records pertaining to AUSA Wheeler, apart from those about his handling of Mr. Bartko's case. Second, OPR's decision to withhold under Exemption 6 and 7C OPR's records about AUSA Wheeler's handling of Mr. Bartko's case. And third, the government's denial of a fee waiver to Mr. Bartko. On the first issue, the District Court should not have allowed the government to neither confirm nor deny the existence of other records related to AUSA Wheeler. The government's invocation of Exemption 7C is squarely foreclosed by this Court's decision in Jefferson, in which the Court held that the government cannot categorically claim that all potential records about a particular assistant U.S. attorney are law enforcement records and are therefore covered by Exemption 7C. The government needed to make a more particularized showing in this case that any records, if they pertain to AUSA Wheeler, if they existed, would have been compiled for law enforcement purposes. You don't think the Barnett Declaration does that? Doesn't the Barnett Declaration make this case look a little bit more like Kimberlin than it does Jefferson? Well, with respect to the declaration that was submitted by the government, essentially what the government said was it recited the Office of Professional Responsibility's mission and its basic functions, and then it simply stated the records here were compiled under this authority and are law enforcement records. And there was nothing more that was particular to this case, nothing about the kind of misconduct that OPR may have been investigating, nothing that would have given the Court a more specific reason to think that OPR was investigating possible violations of law. And what the Court held in Jefferson was that a more particularized showing needed to be made than a flat declaration that all records were law enforcement records. So where the allegations as here include a spectrum of conduct ranging from potentially just, you know, failure to comply with department policies or the U.S. Attorney's Manual all the way down to civil or criminal liability, isn't it going to be the case that every time OPR undertakes an investigation with that range of possibilities, that range of possible outcomes, that it's for the purpose of law enforcement under Jefferson and Kimberlin? So I think what the Court said in Jefferson is that because OPR can have responsibilities that range from violations of DOJ policy up to potential criminal violations, that that means that the government is required to specify what side of the line the investigation in any given case falls on. And it's certainly possible that there are a range of outcomes and there's a potential for a criminal investigation. So what happens in a case where, I mean, I suspect it's not, the different functions aren't here medically sealed off from each other. And so they'll be looking at materials both with an eye to was this illegal conduct or did this violate professional standards of the bar or did it violate Justice Department standards? And I don't know that they're going to do that in separable steps. So what do you do then when they're doing all of those things at the same time? Well, I think what the Court said in rural housing is important here. And what the Court said in that case is there's a need to distinguish between routine oversight or monitoring of government employees on the one hand and investigations into law breaking on the other hand. And the Court recognized that there's going to be a spectrum there. And it pointed out, you know, conceivably almost any investigation of the government's employees could turn into a law enforcement investigation. But what you need is something more particularized. I'm not asking about the spectrum. What I'm suggesting is that in fact they're doing, it's not a range, is that they're doing all three or four simultaneously. Right. Well, I think in that instance there would at least need to be something submitted by the government that would say that there was at least a possibility that this would morph into a criminal investigation. At least some lead about misconduct that they believe could potentially violate criminal laws and that that was part of the scope of their investigation when they undertook it. And I think it's important here to note that the government itself doesn't appear to have believed that a criminal investigation into something like suborning perjury might have been warranted because when they sought rehearing before the Fourth Circuit after Mr. Barco's direct appeal, the government said we think anything that happened here would have been. But they weren't speaking for OPR. I mean, it could very well be that the office in which the attorney is employed says nothing bad happened here and that OPR could come to a different conclusion, correct? Sure. So they certainly could come to a different conclusion. But I think, again, it goes to the purpose of the investigation when it was initially referred to OPR. And it makes it seem that much more unlikely that OPR would have been handed a referral and told we want you to look into whether this AUSA was potentially suborning perjury. And that might have been what OPR did, but if that's the case, then their declaration should have been more specific about that. You keep faulting me for lack of specificity. I'm reading from the Barnett Declaration. Committed specific acts of professional misconduct which, if proved, could result in civil or criminal penalties. That's far more specific than Jefferson, which was saying everything we collect is for law enforcement purposes. So what's inadequate about that? Well, the language about could result in civil or criminal penalties is, in fact, the language that the court used in rural housing to define what counts as a law enforcement investigation. And so the sort of recitation of just what the legal standard is, I think, doesn't really answer the question about whether that was what OPR was doing when it undertook this investigation. It's more of a conclusory statement to say these are investigations that could have resulted in civil or criminal penalties without specifying what types of criminal penalties and what OPR was really looking at and determining whether there was potentially deliberate misconduct in this case, the sort of thing that would allow an inference that that was a real possibility. But if I could move very quickly to the documents that OPR produced and withheld under Exemption 6 and 7C. Again, so there's the set of documents for which OPR took a GLOMAR response and neither confirmed nor denied. And those are ones pertaining to AUSA Wheeler apart from his handling of Mr. Barco's case. Then there's the category of records pertaining to that case. And what OPR said, again, is that these are law enforcement records. Now, even if the court were to accept the argument that these were compiled for law enforcement purposes, there are compelling interests in disclosure here that should outweigh any privacy interests retained by AUSA Wheeler. And I think a couple of things are particularly relevant. And you recognize that as AUSA, he has some significant privacy interests here, right? Yes. This isn't a high-level public figure government official. So it has to be a pretty compelling showing of public interest, right? Yes, Your Honor. Beyond any individual misconduct in which he would be engaged. Yes, Your Honor. And I think, as the court did say in Kimberlin, those interests are somewhat diminished by the fact that the allegations here have already been made public. His name has already been made public. Now, he certainly retained some residual privacy interests against— Well, he's not—I mean, he may not be a high-level supervisor, but he was a head of a unit or a section. And so maybe mid-level or something like that, correct? Yes, Your Honor. Most definitely that is relevant to this case. He was the head of the Economic Crimes Unit in the office. And as particularly relevant here, this was in an office that the Fourth Circuit faulted for having a pattern of potential discovery violations and discovery abuses. So he had a supervisory role in an office that the Fourth Circuit found had a troubling pattern of misconduct that occurred not just in this case, but in several cases that the court had seen before it. And in that type of circumstance, when someone has a supervisory role, I think there's all the more interest in knowing about whether that person committed misconduct in this case. And if he did, what, if anything, OPR did about it. Knowing whether there's been a thorough investigation is also a cognizable public interest that this court has pointed out. But he's called a private—because the FOIA request was just for any OPR referrals or investigations of him. Is there a privacy difference between substantiated and unsubstantiated? Yes, Your Honor. The court delineated in Favish what the sort of threshold showing was that one needs to show to be able to show that there is a public interest in disclosure. And what the court said is that the FOIA requester has to make a meaningful evidentiary showing that would enable a reasonable belief that misconduct may have occurred. And in this case, that showing really— But it has to be more than just individual misconduct, doesn't it? It's got to be some showing that there's some systemic problem. I don't think the court has required systemic misconduct in order to find a public interest. And in some cases where it has required disclosure, like in Stern v. FBI, the court didn't find systemic misconduct. It found that that particular case, there was something significant enough that warranted disclosure. And in this instance, I would say that systems are made up of people, and this was someone who was in charge of a unit in this office. And it's a request for records that go to whether this person committed serious potential discovery abuses. So, Ms. Brill, it sounds like you're asserting a kind of two-tiered public interest. One is the public interest in whether the misconduct that the Fourth Circuit charges in its opinion actually occurred. And relatedly, maybe they're not entirely distinct, but I heard you kind of making a distinction. Relatedly, an interest in how did the government respond and whether its response to that was adequate. Is that right, that you sort of have a two-tiered? Yes, Your Honor. I think it's both what the OPR actually found about the say USA and also an interest in knowing about how it handled that type of allegation and the circumstances here. Under Favish, there's a burden on the requester to articulate grounds that would make a reasoned person think that there was something wrong. And the grounds, it seems like the Fourth Circuit pretty squarely gives grounds on the first of those two tiers. Does Mr. Barco have to and did he meet the Favish standard with respect to the sort of related question of whether the government adequately investigated? Well, I wouldn't say that the showing has to be sort of spliced up into a particular showing of wrongdoing with respect to AUSA Wheeler and a showing that OPR somehow mishandled this. In Stern, for example, the court did say that there was an interest in knowing about the thoroughness of an internal investigation. I think it said the same thing in Crewe versus DOJ in the request for records on the case involving former Congressman Tom DeLay. It said there's an interest in knowing about the thoroughness of an investigation. And if I can just add, if I have one minute or less than a minute to say this, the public interest here also weren't in favor of granting at the very least a fee waiver in this case. I think it's been submitted that the public interests here are substantial, and the threshold required for a fee waiver is really a lesser showing than is required to override someone's privacy interests. The court has no further questions. We'll give you some time back for questions. We'll hear from the government. Good morning. May it please the court, I'm Josh Kolsky on behalf of the appellees. In this case, OPR investigated specific alleged acts of a particular individual, and those acts could, if proved, result in civil or even criminal sanctions. Therefore, the records generated... For what OPR investigation will you not be able to say that same thing? An OPR investigation into conduct that was purely a potential violation of DOJ rules, such as if OPR investigated someone for not getting their appellate brief reviewed before filing that? Is that how... I mean, when a referral comes, do you only investigate... If someone says, I want this investigated for misconduct, do you know up front whether you're going to look at violations of internal rules, bar rules, civil rules, criminal rules, or do you sort of have to get into it and see what someone may think it looked like, and not just a failure to follow internal policy, but then you could very well discover something more? I assume that happens sometimes. I think that there are some instances where the conduct is just clearly of the sort that would not lead to civil or criminal sanctions, like the example I gave. But in most situations... Do you really get a lot of referrals? I'm sorry? You get a lot of referrals for not checking with a supervisor before filing briefs? I would think the supervisor would take care of that directly. I don't think there's many of those. No, I would think that most, if not all, of your referrals would be... You know, it's pretty serious by the time something gets referred to OPR. I think that's... Okay, and so then everything's going to be on it, at least civil or bar. Do you consider bar enforcement proceedings to count as a form of civil liability? Yes, Your Honor. Okay, so then just about anything that comes to you, you're going to be able to say it's just always going to be law enforcement. I think it would typically be the case that it would be a law enforcement investigation. More than typically. It seems like, again, if you're only getting... I'm assuming you're not getting the trivial referrals that a supervisor can handle herself, but that you're getting things that are more substantial, at which point... My understanding is that there are some circumstances where OPR is investigating purely potential violations of DOJ policy. Does OPR make a determination up front? I mean, it seems like you might conduct an investigation differently if OPR believed that there really were criminal stakes and or going to court kind of civil stakes. Is that the case, that OPR internally has sort of any kind of points of determination, putting things on the kind of internal investigations track versus putting it on the this is more serious track? My understanding is that there's no differentiation and there's no threshold determination that this is a, you know, we're going to investigate criminal liability here. They investigate the conduct, and that may not yield a very lengthy investigation because they may look at it and decide there's nothing there. It may evolve into something much more serious where they find evidence of criminal wrongdoing and they make a referral to another office. But so I think what's important for the exemption seven threshold issue is it's looking at the conduct. It's not that the agency makes some sort of determination that this is a potentially criminal investigation. They're looking at the conduct, and they follow the evidence where it may lead. But didn't we in rural housing there was some acknowledgement that to read the rule the way that you appear to be asking us to read it would, the exception would swallow the rule, that there really wouldn't be situations in which an OPR completely internal, disciplinary employee investigation would be treated as non-law enforcement under Section 7C? And I think there could be those situations, and I would agree it's not going to be typical. What if there were a situation in which an allegation of misconduct comes in to OPR and OPR looks at all the information before it and says this is really overblown, this is not going to be a problem, investigates it with that template in mind, and lo and behold nothing illegal, civil or criminal, comes to light, and in the end a report is made that indeed this was, if anything, a little bit of a lapse in judgment. In that case, would you be here arguing that that was protected by 7C as law enforcement investigation? If the conduct that they were investigating is such that civil or criminal sanctions could result, then yes. If OPR's view of the conduct as opposed to the referring court or entity's view, if OPR's view is nothing law-breaking about this, but we will do an investigation. Of course, if something serious comes up, we will step it up. But if OPR's assessment from the outset is no, this is not going to be a violation of law, because the referring entity might have thought so, would you still be here saying this is a law enforcement investigation? Yes, and I think that gets to the added protections under Exemption 7C compared to Exemption 6. There's a stronger protection because of the nature of law enforcement proceedings there's greater harm to a person if they're associated with those proceedings. And you can't always explain that, well, those allegations didn't amount to very much or there wasn't a lot of evidence to support that. That really relates to the privacy interest. If it were, as I hypothesized, there were some situation in which some other entity thought that they were a very serious concern, maybe reaching criminal, but OPR did not, and then OPR did a complete investigation, and indeed OPR thought that its view, not the view of the referring entity, was vindicated, what privacy interest would the subject of such an investigation have if the referral had been public, basically impugning that individual's reputation? And OPR's investigation clears that individual. Is there a privacy interest on that individual's part of not having that investigative result made public? Your Honor is saying if the outcome of the investigation was favorable to the subject. Yes, and no law enforcement activity recommended or ensuing. I think that there is still a privacy interest, even if the information is favorable. For one thing, there could be an instance where someone is very dissatisfied with the fact that the agents at OPR did not find liability, and that could result in repercussions for the subject of the investigation where someone feels like justice wasn't done. So whether the information is favorable or disfavorable, I think there's a privacy interest regardless. Although I think Ms. Brill would say, well, that's a public interest. That runs up against a public interest in the broader public, at least in a case like this where the Fourth Circuit says we have a problem. We think there's a lot of failings here, and it leaves the public in a kind of cliffhanger position. What does the Executive Branch do about this? So there is a public interest there, too, no? At least if we're going to apply that analysis to this case. A public interest in understanding the thoroughness of the investigation. Precisely. This Court has recognized public interests of that sort. I think that it's difficult to say that that public interest would be significantly advanced here, where this is one isolated investigation. There's already a great deal of public information out there about this issue, and also there's public information about OPR's investigations, and that information is at the aggregate level. It's not one data point like here. Are you suggesting that had Mr. Bartok just made his inquiry broader than Wheeler that he'd have a better case in your mind? I'm not suggesting that, and we would always have to evaluate. If the FOIA requests were different, we would have to evaluate that and consider that. But it sounds like you're saying because he was focused on alleged misconduct by AUSA Wheeler that it doesn't get to the public interest issue. What I'm saying is what OPR did in any one case is not very probative, particularly when there's already a lot of public information about OPR's practices generally. We cite it to an OPR annual report in our brief. That contains a great deal of aggregate-level information. How many matters are referred to OPR? What were the outcomes? And it has, in fact, even descriptions of summaries of many of the investigations without revealing person-identifiable information. I don't understand that argument at all because whatever general statistics there are about what OPR does, how they handled a particular case in which there had been a public denunciation of attorney conduct is something of acute public interest. It doesn't matter how well you did in other cases. People want to know what you did when that landed in your lap. Right? That's a legitimate public interest in its own right, is it not? I'm not saying there's no public interest. No, it's a serious interest when a court of appeals unanimously refers a matter to OPR. The U.S. attorney refers the matter to OPR. And the federal government tells the Fourth Circuit we're changing policies as a result of this situation. It's hard for me to think of many stronger interests. I mean, that's a pretty strong public interest. And yet there are also strong privacy interests, and this same type of public interest has been raised in other cases, including Kimberlin. It was raised in PETA versus HHS and Bloom Garden. And in each of those cases, the privacy interests were found to outweigh that public interest. Did they have announced policy changes by the government in those three cases? I don't believe so. And weren't those before OPR's role narrowed? I mean, back then OPR was investigating civil and criminal liability, whereas here now OPR is really confined to the sort of internal disciplinary and maybe bar referral type of investigation, right? Well, no. So OPR investigates allegations of attorney misconduct, and if those allegations involve possible civil or criminal liability, they still investigate that. Has OPR's role changed between the two cases? Or should I say regulatory changes? Well, its role changed with the creation of OIG in 1989. The rule changes that I believe Your Honor is referring to were in 2006, and that was to codify the changes that had been in place since 1989. And those changes are? Matters after the creation of OIG, certain matters were referred directly to OIG instead of to OPR. If you pick up an investigation, OPR picks up an investigation and they say, whoa, there's a real criminal issue here, does OPR just keep going along or does it refer to OIG? OPR would make findings, and if it believed there was a basis for criminal liability, it would refer that to either United States Attorney. Would it do the whole investigation or would it, when it looks and opens the file and let's say it becomes pretty clear or quite clear early on, this is a criminal matter, does OPR just keep going or does it refer that criminal matter to OIG? I believe it's still, it keeps going. It makes its findings, but it would, for I guess the criminal portion of that, it would refer that to the United States Attorney's Office. And its investigation would then be focused on internal. Its findings and investigation would be focused on the, presumably, attendant violations of internal standards or professional standards. I'm not sure how, at what point it breaks off, if it does or if it just all happens at the end, if OPR concludes its investigation and at that time makes its referral. I'm not sure of the sequence. I'm just trying to connect. My understanding is OPR's role is to figure out whether internal disciplinary rules or maybe a bar referral, professional standards have been violated. And beyond that, if its findings point to something else, it sets that over to OIG or elsewhere. I guess I don't believe OPR's mission is quite that. Is OPR doing a criminal investigation? Well, it investigates conduct that may result in criminal sanctions, but it certainly can't bring criminal charges. So, Mr. Kolsky, just to get clear what you think we should be looking to to determine whether the purpose of an investigation was for law enforcement, should we look to the way the referral is framed or should we look to any possible consequences from the conduct identified in the referral? Or is there a purpose that attaches at the threshold for OPR? How is one to determine? What are we even supposed to be focusing on? Because what I'm concerned about, let me just put it out, is that the way you frame the standard, it appears that any conduct that's been identified that could conceivably be packaged as a violation of the civil or the criminal law, that investigation would then come under 7C. And that's broader, I think, than our court has yet framed it. Well, I look back to the test from rural housing, which it talks about investigations focusing, quote, directly on specifically alleged illegal acts of particular identified officials, acts which could, it proved, result in civil or criminal sanctions, end quote. And so I think the focus is on the acts. What acts or what conduct is being investigated? And if that is conduct that could, if proven, result in civil or criminal sanctions, then I think that is a law enforcement investigation. And does OPR typically, when it begins an investigation and interviews an employee, do they typically Mirandize the employee and or counsel them that they should have a lawyer? I don't know the answer to that, Your Honor. Can I go back to the public interest questions that I had earlier? In your brief, you rely on Boyd v. Criminal Division. Yes. In light of your colloquy with Judge Millett, do you think Boyd is still? I mean, Boyd says a single instance of a Brady violation doesn't trigger the public interest. Is that what we're dealing with here, or are we dealing with something more significant than a single instance of a Brady violation? The Fourth Circuit certainly raised the issue of whether there was a pattern of discovery abuse, and I think that may be what Your Honor is getting to. Yeah. So Boyd doesn't really work here, does it? I mean, Boyd is all about a single instance of a Brady violation. That's not this case, is it? Well, the district court reviewed all the OPR records in camera and determined that they didn't show anything more systemic, broader prosecutorial abuse within the Department of Justice. So even if there was a showing of something more broad generally, these particular records, the OPR records, according to the district court, did not show, would not advance that public interest. But the public has, if there has been, if a reasonable person looking at the circumstances might think that there was a pattern of violation of law, the public has an interest in knowing how the government addressed that either way, right? If it turns out not to be true, the public would want to know that, and if it turns out to be true, the public would want to know that. I mean, it's not that there's an asymmetry where it turns out that there wasn't any such pattern, that the public has no interest in so learning. I thought in Rosati that we said either way, public interest. Well, the government has responded to that determination by the Fourth Circuit in its petition for rehearing, and the government stated its position there and stated why it didn't believe that the three cases that were cited were examples of discovery abuse. In fact, in one of those cases, the Fourth Circuit expressly found that there was no bad faith. In another one, the Fourth Circuit had determined that a document, a transcript that had not been turned over to the defense didn't have to be turned over. Did the government apologize or not apologize for the attorney's conduct in that rehearing petition? In the Barco case? In the rehearing petition, did it apologize for the attorney's conduct? I don't think it used those words. It stated that it regretted that there had been some discovery failures. Did it say that in light of the Fourth Circuit's decision, it was making a number, three or four of them as I counted, policy changes? Yes, it did. So why then is there not a substantial public interest in understanding the OPR investigation and how this AUSA's head of the environmental crime section was investigated and the outcome? I mean, just declaring that we didn't find anything, given the contrast between the Fourth Circuit decision, the rehearing petition, and that is itself a matter of public interest, is it not? At least on the question of how OPR is doing its job, which might be perfectly fine, to be clear. It might be exactly right. I'm not saying one thing one way or the other, but there's certainly an extraordinary public interest. And I agree that there's some public interest in knowing how OPR does its job. Some? What do you mean by some? The issue, I guess the public interest question has two parts. There needs to be a significant public interest, and it needs to be advanced by disclosure of the particular records at issue. And so the question is how much is that public interest advanced by these records? Given that there's already public information, there's numerous filings in Mr. Barkow's criminal case, the Fourth Circuit's opinion, the government's petition for rehearing. What do any of those reveal about OPR's investigation? How do they show that OPR did its job? Without influence, thoroughly, without influence, without favoritism? And I'm not suggesting that it happens at all. That's what the public's going to be wondering. How do any of those records show that? That's what he's trying to get at. He's trying to get at that aspect of this inquiry. Well, I think to some extent documents that reflect more specifically on OPR's investigation would be records that it did release. It did release some records here. And the Vaughn Index in this case actually lists the documents, at least the ones that were generated by OPR relating to this investigation, and there's a fair amount of information that one could glean about the investigation from that Vaughn Index. That's nothing like the sufficient external or public information that you have in the Favish. A Vaughn Index is nothing remotely like that. There were Vaughn Indexes in Favish. Right. And I'm not suggesting that certainly there would be additional information disclosed if the records themselves were revealed. But, again, it's a balancing. There are significant privacy interests here, and in other cases this Court has found that the public interest in learning about the thoroughness of an investigation did not outweigh the privacy interests involved. Thanks. One quick question on the grand jury, Exemption 3, the thumb drive issue. How does either the declaration that was submitted here or the district court's explanation of in-camera review satisfy our Laveau decision, which, to be fair to everyone, came after the district court's decision? I think particularly the Hardy Declaration that was submitted in camera explains that the documents on the thumb drive, if they were combined with certain public information, could identify the fact that they were subpoenaed by a grand jury. Great. Thank you. I think we used up all your rebuttal time, but we'll give you back a minute. Thank you. So just a couple of quick points I'd like to raise. It is the case that the cases that the government has relied on, where the Court has come out and said that there is an insufficient public interest, have all involved what the Court has characterized as isolated incidents. And that was true in Kimberlin. It was true in Bloomgarden. And it was true in Boyd. And I think that makes those cases fundamentally different from this one, where you had one substantiated incident where there are reasonable grounds to believe there was misconduct, but also a pattern that was found by the Fourth Circuit, by the unanimous panel in that opinion. And the connection between a substantiated incident of misconduct coupled with a broader pattern creates a public interest that should be sufficient to override any privacy interests at stake here. For similar reasons, Mr. Barco is at the least entitled to a fee waiver for his additional requests that were made for documents pertaining to his case from OPR. And for those reasons, I urge the Court to reverse the decisions of the District Court. Thank you. Thank you very much. Ms. Pearl, you were appointed by the Court to represent the appellate in this case, and we thank you for your assistance. Thank you. The case is submitted.
judges: Griffith, Millett, Pillard